## WINFIELD M. BULLOCK

### *v.*

## DENNIS NARROTT.

1. FRAUD—*how shown.* It is not the rule that fraud must be shown by affirmative testimony. Proof of such fact may be shown by circumstances, from the existence of which, the inference of fraud is natural and irresistible.

2. INSTRUCTIONS—*must be based upon the evidence.* It is error for the court to give an instruction which presumes the existence of a fact, that the evidence does not show to exist.

3. SAME—*which direct the jury to decide upon a question of law—erroneous.* The question, whether a mortgage had been properly executed and acknowledged, is one of law, to be passed upon by the court, and which it is error to leave to the decision of the jury.

4. FRAUD—*presumptive evidence of.* Where a party executed and delivered to another a chattel mortgage upon certain property, which was duly recorded, and shortly after died, and in an action of replevin for the mortgaged property, which had been taken upon execution, subsequently brought by the mortgagee, it was shown, that at the time of the mortgagor's death, he had in his possession the note for which the mortgage was given as security: *Held,* that this fact was a strong circumstance against the *bona fides* and honesty of the mortgage transaction, the presumption being, either that the note had never been delivered, or had been paid and taken up; and this, no matter how honest the transaction may have been.

APPEAL from the Circuit Court of Woodford County; the Hon. SAMUEL L. RICHMOND, Judge, presiding.

The facts in this case are fully stated in the opinion.

Messrs. INGERSOLL, McCUNE & S. D. PUTERBAUGH, for the appellant.

Mr. JOHN CLARK, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, in the Woodford Circuit Court, by Dennis Narrott against Winfield M. Bullock, the sheriff of that county, who had levied an execution upon the property in question, issued in favor of Backnell & McKinney, out of the clerk's office of the circuit court of Woodford, against Joseph Jacquin, bearing date September 30, 1867.

It appeared the property belonged to Jacquin, and was claimed by the plaintiff under a chattel mortgage executed to him by Jacquin, dated July 26, 1866, duly acknowledged and recorded, to secure the payment of a note of the same date, for $300. The property was levied on by the sheriff as the property of Jacquin, on the 17th day of December, 1867. The sheriff entered upon the property, took the keys and brought them away with him. The property was a warehouse, a corn-crib, a small frame building used as an office, and one Fairbanks scales, all on the right-of-way of the Toledo, Peoria & Warsaw Railroad, and so constructed as to be easily removed. The fee in the land was in the railroad company. Their value was about $8,000.

It was testified on the part of the defendant, by one Schneider, that on the 28th of October, 1867, the day of the death of Jacquin, his widow showed to him a note, payable to the same person and signed by the same person as the one offered in evidence by the plaintiff, saying, that she had found it among Jacquin's papers after his death; is satisfied the note in evidence is the same as the one showed him by the widow of Jacquin.

Mrs. Jacquin, the widow, testified, she could not read English; that after her husband's death she found some papers he had in his possession, and took them to Mr. Schneider, and afterwards gave the plaintiff, who is her brother-in-law, one of these papers.

It was proved by several witnesses, that in 1867, all the claim the plaintiff had against Jacquin was for some liabilities he was under as surety on a replevin bond to one Davidson,

which, if Davidson recovered, would amount to about $600, and for a debt he had paid one Cross, due by Jacquin, amounting to $144.

It was also proved by one O'Connell, when the mortgage was made, the property was worth about $6,920 ; that he had a conversation about this mortgage several times with plaintiff; first talked with him the winter after Jacquin's death, when he said, in one of the conversations, that he did not want to have any lawsuits, and wanted witness to write to Munn & Scott for him, and say that he would give them $700 or $800 for their claim against Jacquin and this property. Witness wrote the letter. Plaintiff then went on to say, that he wanted to get enough out of this property to pay Mrs. Cross, and to secure himself on the Davidson matter. He said if he could get enough out of it to pay Munn & Scott $700 or $800, and secure himself, he would be satisfied. He went on Davidson's replevin bond in April, 1867.

The jury, under instructions, found for the plaintiff, and after overruling a motion for a new trial, judgment was entered on the verdict.

To reverse that judgment, the record is brought here by appeal, and the errors assigned are, in giving improper instructions for the plaintiff, and overruling defendant's motion for a new trial.

It is clear, from the testimony, that the liability to Davidson did not exist when the mortgage was executed, and the only indebtedness by Jacquin to the plaintiff, was the comparatively small sum of $144 paid Cross.

The fact that the note was found in the possession of Jacquin at his death, is a strong circumstance, unexplained, to show, either it had never been delivered by Jacquin, or that it had been given up by the plaintiff. Most probably, the note was never delivered, and that the mortgage was executed to protect the property from creditors, and was not *bona fide.*

We think the evidence greatly preponderated in this direction, and established a fraudulent intent by both parties, and the jury should so have found, and probably would, had it not been for the instructions of the court.

Several of these instructions are quite objectionable. It is not true, as declared in the third and sixth instructions, that fraud must be shown by affirmative testimony, by which, we understand, positive and direct proof of the fact. It may be shown by circumstances, from the existence of which the inference of fraud is natural and irresistible.

The second instruction was wrong, as there was not a particle of evidence the mortgage was executed to secure future advances.

The third and tenth instructions required the jury to decide upon the proper execution and acknowledgment of the mortgage, and were improper. It was error so to instruct the jury. That was a question of law for the court, on its being offered in evidence.

The fourth, fifth, seventh and tenth instructions are not based upon the evidence, there being no proof the mortgage was made to secure either a debt then actually existing, or to secure future advances.

The ninth instruction is also objectionable, and well calculated to mislead the jury. The jury should have been told, it was a strong circumstance against the *bona fides* and honesty of the transaction, that the note was found in the possession of Jacquin at the time of his death. The presumption would be, either it was never delivered, or had been paid and taken up, and this, no matter how honest the transaction may have been.

We are not satisfied with the verdict and rulings of the court in this case, and are of opinion injustice has been done by them. There was no evidence, that at the time of the execution of the chattel mortgage, Jacquin owed appellee one dollar, and hence it was made to secure future indebtedness.

9—49th Ill.

Jacquin was in debt, at this time, to Backnell & McKinney, on the note executed in 1859, on which the judgment in question was rendered, and it appears, from appellee's connection with O'Connell, that Munn & Scott had a claim against him for $700 or $800, which he wished to purchase. Taking, then, into consideration the fact that Jacquin owed appellee nothing when the mortgage and note were made; that the note was found in possession of Jacquin at his death; that Jacquin did owe Backnell & McKinney, and Munn & Scott, the conclusion is almost irresistible, that the mortgage was covinous, and designed to defraud, hinder and delay their creditors; that there was really no consideration for it, and ought not to be set up to defeat the claim of a *bona fide* judgment creditor.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*