Jordan et al. v. Easter et al.

---

## William A. Jordan et. al.

### v.

## J. D. Easter et al.

1. EFFECT OF WRITTEN INSTRUMENTS—DUTY OF COURT TO CONSTRUE. —It is the duty of the court to construe the effect of written instruments, and an instruction which submits the construction of such instruments to the jury is erroneous.

2. STATEMENT.—Appellees delivered harvesters to appellants under a contract, whereby they guaranteed the sale of a specified number during the year; and in case any remained unsold, appellees could require appellants to pay for those unsold, the harvesters to remain the property of appellees until paid for. At the close of the year a settlement was had, and appellants gave their notes for the machines remaining unsold, stipulating in the notes that they were given for the purchase of harvesters; that the machines should remain the property of appellees, etc.; and that appellees should have the right to possession thereof at any time, etc. Subsequently, at a meeting of the creditors of appellants, it was agreed by appellees, with other creditors, that appellants might sell the goods on hand, as the agents of their assignees, and the proceeds of such sale be divided *pro rata* among the creditors; such agreement not to release the claims of any creditor for goods in appellant's hands for sale on commission.

3. CONDITIONAL SALE.—*Held*, that appellants held the harvesters in

question by means of a conditional sale to them; that appellees, by joining with the other creditors in the agreement mentioned, had waived their right to re-take the property, and they could not now assert it under a claim that appellants held the machines for sale on commission.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, for appellants; argued that where personal property is sold with a reservation of ownership or title in the vendor, the sale is void as against third parties, and cited Hervey v. R. I. Locomotive Works, 93 U. S. 664; Murch v. Wright, 46 Ill. 487; McCormick v. Hadden, 37 Ill. 370; Ketcham v. Watson, 24 Ill. 591; Morris v. Grover, 2 Scam. 528; Butters v. Haughwort, 42 Ill. 18; 1 Parsons on Con. 537.

Messrs. GARNSEY & KNOX, for appellees; contending that the title remained in appellees, and appellants could not dispose of the machines so as to prejudice their rights, cited Potter v. Dennison, 15 Gilm. 590; 2 Kent, 625; Story on Agency, § 225; Paley on Agency, § 340; 8 East. 13.

That the settlement and giving of the notes did not waive their right to re-take the property: Murch v. Wright, 46 Ill. 487; Brundage v. Camp, 21 Ill. 330; W. U. R. R. Co. v. Wagner, 65 Ill. 197.

The assignment by appellants did not divest appellees of their right to the machines, the assignees taking only the title of appellants therein: O'Harra v. Jones, 43 Ill. 288; Stow v. Yarwood et al. 20 Ill. 498; Dole et al. v. Olmstead et al. 41 Ill. 344; Goodwin et al. v. Mix et al. 38 Ill. 115; Reed v. Sands, 37 Barb. 185; Griffin v. Marguardt, 17 N. Y. 28; Harris v. Pratt, 17 N. Y. 249; In re Howe, 1 Paige Ch. 125.

That parol evidence in relation to the settlement should not have been admitted to vary the written instruments: Hartford Ins. Co. v. Webster, 69 Ill. 392; Snyder v. Griswold, 37 Ill. 216; Harlem v. Boswell, 15 Ill. 56; Abrams v. Pomeroy, 13 Ill. 133; Broadwell v. Broadwell, 1 Gilm. 599; Lane v. Sharpe, 3 Scam. 567.

Jordan et al. v. Easter et al.

SIBLEY, P. J. This action comes up by way of appeal from the Circuit Court of Grundy county, where J. D. Easter & Co. recovered in replevin of the appellants seven Marsh harvesters. These harvesters were among others delivered to Jordan, upon a contract executed by him and the appellees, Nov. 7th, 1874, by the terms of which they were to be shipped by Easter & Co. to Jordan, between the 1st of January and July, 1875. In this contract, Jordan guaranteed the sale of the machines, for which he was to have a certain sum for selling; and in case he failed to make sale, Easter & Co. could require him to take and pay for them himself, by note, to become due the 1st of August, 1876, or otherwise; the machines to remain the property of Easter & Co. until paid for in cash, or farmers' notes. Eight of these machines, which were received by Jordan in the spring of 1875, were on hand Sept. 18th, 1876, when the agent of Easter & Co. called on Jordan and adjusted the matter of business then existing between the parties. Upon this settlement, four notes for $300 each, payable on the 1st of August, 1876, were given by Jordan to Easter & Co. for the eight machines not sold. Attached to these notes was this memorandum:

" The undersigned hereby waives all benefit of exemption laws, and all relief from stay of execution, valuation or appraisement laws, and agrees to pay an attorney's fee equal to ten per cent. of face of note, to be entered up as part of judgment if this note is to be collected by suit. This note is given upon the purchase of a Marsh harvester, on the express condition that the title or ownership does not pass from J. D. Easter & Co. until this note and interest is paid in full; and the said J. D. Easter & Co., or their assigns, are hereby fully authorized and empowered to declare this note due any time they deem themselves insecure, even before the maturity of the note, and proceed to collect the note, and if they so elect, take possession of said Marsh harvester."

At that time there was also executed by Easter & Co. the following receipt:

"OFFICE OF W. A. JORDAN,
"Grundy county Agricultural Warehouse, Washington St.,
"MORRIS, ILL., SEPT. 18th, 1875.
"$1,200.

"Rec'd of W. A. Jordan four certain notes, of even date herewith, for the sum of twelve hundred dollars, being for eight Marsh Harvesters in hand; and we hereby agree that should we reduce the wholesale price for the season of 1876, that we will endorse upon said notes an amount equal to such reduction in price, provided that we may, at our option, take said machines, in good order, free of charge, except freight, upon the surrender of said notes given for the machines.

"J. D. EASTER & Co.
"By CLOSE."

Jordan, after the execution of these notes and the receipt, prior to Oct. 11th, 1876, sold one of them, and appropriated the proceeds. On the latter date Jordan made an assignment of all his property to Conrad Furst, Wm. C. Downey and Hugh Hamilton, for the benefit of his creditors. Afterwards, on the 10th of Oct., 1876, the creditors of Jordan, including Easter & Co., held a meeting and entered into this agreement:

"At a meeting of the creditors of Wm. A. Jordan, of Morris, Grundy county, Ill., held this day, in said city of Morris, pursuant to a call made by Conrad Furst, Wm. C. Downey, and Hugh M. Hamilton, assignees, to whom the said Jordan has heretofore conveyed all his property for the benefit of his creditors, it was unanimously resolved that the said Wm. A. Jordan be employed by the said assignees to take charge of all the assigned property, and assets, and proceed to sell and convert the same into money, under the supervision and direction of the assignees, who shall distribute the same under said assignment: On condition that the said Jordan shall accept such agency and agree to act in that capacity, without charge or expense to the assignees, and the said Jordan having signified his acceptance of such employment, and the conditions attached thereto; now, therefore, in consideration of these premises, we, the undersigned creditors of the said Jordan, whose names are hereunto subscribed, consent to and accept the

arrangement proposed by said resolution, in full satisfaction of all our claims against the said Wm. A. Jordan, it being expressly understood that we do not intend hereby to release any claim which we, or any of us may have, to goods committed by us to the said Jordan for sale on commission. Witness our hands, this 25th day of Oct. A. D. 1876."

The right of the appellees to recover these machines, depends principally upon the construction to be given to these written instruments.

Although it is assigned for error, that the court below refused to allow the witness, Jordan, to testify as to what took place between him and the agent of Easter & Co., in respect to the settlement of 18th Sept., 1875, and a majority of the court is of the opinion that he ought to have been permitted to answer the questions, since the written memorandum only related to the sale, and the condition of the title until payment made, many other facts surrounding the transaction, not intended to vary the contents of the written instruments, were proper to be proven by oral testimony. But it is quite clear that he should have been allowed to answer the question, "Whether or not at the time of the assignment he had any property in consignment for sale on commission." Jordan was permitted to testify that he had considerable property that was turned over to the assignees, besides these Marsh harvesters. It then became important, in considering the construction of the composition agreement entered into by the creditors of Jordan, to know how he held it, in order to determine the precise condition of the property which was so turned over. If Jordan held no goods on consignment for sale on commission, then the later clause of the agreement would have to be treated as a nullity, unless it could, by a forced construction to obviate that conclusion, be made to imply goods which had been obtained by means of conditional sales. But if Jordan had goods consigned to him for sale on commission, the language should be restricted to that class of property alone; and no other construction could reasonably be given to it. That Jordan, at the time of his assignment, held these Marsh harvesters by means of a conditional sale, admits of

little question, whatever may have been the character of the delivery under the original contract of Nov., 1874, which seems to have partaken more of the nature of a delivery upon an agreement to purchase, than on a commission to sell; for the factor, by the terms of the contract, had agreed on certain conditions to become himself the purchaser, if he failed to make sale to others.   By the settlement in Sept. 18th, 1875, when the notes were executed on the part of Jordan, and the receipt taken from Easter & Co., the character of Jordan's possession was converted into that of a conditional purchaser, if it was otherwise before that time.   The memorandum attached to each of the notes is that it was " given upon the purchase of a Marsh harvester, on the express condition," etc.; and the receipt executed by Easter & Co. to Jordan at the time these notes were given, also states that they were executed for the eight Marsh harvesters, which would seem to be conclusive evidence that Jordan did not hold the harvesters to sell on commission.   It is said that by the terms of the receipt, Easter & Co. had the right to take possession of the harvesters at any time they chose, and therefore no sale could have been intended.   We do not understand such to be the proper construction of the receipt. The wording is, in substance, that if the wholesale price of the machines was reduced for the season of 1876, an amount equal to the reduction should be endorsed on the notes by Easter & Co.; or they would take back the machines if delivered in good order and free of charge, provided they preferred to do so.

The position is a correct one, that courts will construe contracts according to the intention of the parties who executed them.   That is, the intention of all the parties, not that either one can loosely or artfully insert into an agreement words of doubtful meaning, and then call upon the court to give them such a construction as the inserter intended, unless they will fairly bear that interpretation.   Can there be any doubt that Jordan did not understand the writings of the 18th Sept., 1875, to mean a purchase by him of the machines?

Or that the creditors would have refused to sign the agreement of composition if they had given the same construction

Jordan et al. v. Easter et al.

to the latter clause of it as is now insisted upon by the appellees. Nor unless they had understood that Easter & Co., by signing the agreement, had placed themselves upon the same footing with the other creditors, waiving all right to claim the machines as their own separate property. It is urged that Easter & Co. had other claims against Jordan besides the four notes, and were therefore his creditors independent of the notes, hence entitled to share in his assets as to those other claims. But is there any evidence that this fact was known to the other creditors at the time of the meeting and execution of the agreement, or that Easter & Co. did not then intend to put these four notes in as a claim against Jordan, for the purpose of obtaining a larger distribution of the assets in the hands of the assignees? None whatever, until after the agreement had been signed and the creditors adjourned and separated when the notes were tendered and the machines demanded of the assignee. How would it have been as the case stood when the composition agreement was executed by all of the parties, both debtor and creditors? They had agreed with Jordan that if he would devote his time, as agent of the assignees, to converting the assets into money, they would each take a *pro rata* share of it in full satisfaction of their claims. Now suppose the assets paid but fifty cents on the dollar, what was there to hinder the other creditors of Jordan, if they had seen the transaction in the light now sought to be viewed, from believing that Easter & Co. might present these notes as a debt against him, and obtain by that means a distribution sufficient to cover their other indebtedness in full; make the application on that alone, and hold these machines by virtue of the unpaid notes, while the balance of the creditors would be compelled to release their claims upon receiving one-half of the amount due upon them.

To instructions one, two, three, four and five, given for the plaintiff, no objection is discovered. They state the law with reasonable accuracy. That the assignees under this general assignment were in no better position than Jordan himself would have been to resist the claim of Easter & Co. to the harvesters, is a proposition too well settled in this State to require the citation of authorities in its support.

The 6th instruction given for the plaintiff, which is as follows: " 6. That if, from the evidence, the jury believe defendant Jordan agreed with plaintiffs that they (plaintiffs), should have the right to take possession of the machines in question at any time before the notes offered herein as evidence by the plaintiffs were paid on payment of freight on the machines, and that plaintiffs have not waived such right to take possession, but demanded said machines and tendered the freight charges thereon, said notes remaining unpaid and tendered, such agreement is valid and binding on Jordan and his assignees, and such a demand and tender to said assignees, would entitle plaintiffs to recover from them," is liable to several objections. In the first place, it submits the question of the effect of the papers executed on the 18th of Sept., 1875, to be interpreted by the jury, all oral testimony having been by the court excluded. This was clear error. It is for the court to construe the effect of instruments in writing, and not submit that question to the jury. Bullock v. Narrot, 49 Ill. 62; Mitchell v. Town of Fond du Lac, 61 Id. 174; White v. Murtland, 71 Ill. 250; and it also completely ignored any change Easter & Co. may have made in respect to their right to take possession of the harvesters in signing the composition agreement, Oct. 25th, 1876. Instruction twelve is erroneous for the same reason, that it submits the question of law to the jury, whether the machines were held by Jordan on consignment for sale on commission. The judgment of the Circuit Court must be reversed and the cause remanded.

Judgment reversed.