# EDWARD T. WHITE

## *v.*

# ALEXANDER MURTLAND.

1. VENUE—*when application for change of, should be made.* The statement in a petition for a change of venue that the defendant did not know of the commencement of the suit in time to have made the application at the first term of the court, when, from the whole record, it is apparent that the reason he did not know of it was, that he had absconded from the State to avoid legal process in relation to the same subject matter on which the suit arose, is not sufficient to obviate the necessity of his showing that the cause for the change asked for, has arisen or come to his knowledge subsequently to that term.

2. An application for a change of venue at the second term of court after suit was brought, which commenced on the 5th day of August, was based upon the prejudice of the inhabitants of the county, and stated that the defendant did not know that such prejudice existed to the extent it did, until after the 25th of July: *Held,* that this statement implies that defendant knew, previous to July 25th, that the inhabitants were prejudiced against him, and that he should have applied to the judge at chambers, for the change, so as to save trouble and expense on the part of the plaintiff in preparing for trial.

3. PLEADING—*what the plea of not guilty in an action for seduction puts in issue.* The plea of not guilty puts in issue, both the fact of seduction, and the fact that the person seduced was the servant of the plaintiff.

4. COSTS. It is discretionary with the court to certify the number of witnesses a party is entitled to have costs taxed for, and even if the court should abuse its discretion in this respect, it would be no ground for reversing the judgment for damages.

5. EVIDENCE—*pecuniary circumstances of parties.* In an action by a father for debauching his infant daughter and getting her with child, it is competent to show the pecuniary circumstances and position in society of both plaintiff, and defendant.

6. But this is not for the purpose of ascertaining what amount of damages the defendant is able to pay, but with a view of ascertaining the extent of the plaintiff's injury, perhaps fixing a standard of exemplary damages.

7. SEDUCTION—*evidence of an abortion proper in an action for.* The father has a right to bring either an action in trespass, or case, for the seduction and getting with child his infant daughter, and, in an action on the case, where the declaration, in addition to the seduction and getting with child, charges that the defendant produced or attempted to produce an abortion on the plaintiff's daughter whom he had so got with child, it is competent to introduce evidence to prove such fact.

8. If the action were in trespass, it would be competent for the plaintiff to charge the seduction in one count, and the abortion in another, and if they were both charged in one count, without averments connecting the abortion with the original trespass, it would be demurrable for duplicity; but if the defendant, without demurring, took issue, he could not exclude evidence of the abortion.

9. SAME—*consent of infant daughter of plaintiff.* The infant daughter of a plaintiff is incapable of consenting to carnal intercourse, and she is equally incapable, without regard to the criminal law, of consenting to an abortion.

10. SAME—*general character for chastity of the party seduced is involved in a suit for.* The general character of the daughter for chastity is involved in the issue, where the father sues for her seduction and consequent pregnancy, and the testimony of others than herself may be introduced to show their own criminal intercourse with her, and the time and place; but, notwithstanding such evidence, if the jury are satisfied from the whole evidence that the defendant is the father of the child, their verdict must be for the plaintiff, though, perhaps, for diminished damages.

11. But evidence of particular acts of immorality or indecorum, as well as of general bad character of the party seduced, must be confined to what occurred previously to the defendant's misconduct.

12. SAME—*father may maintain suit for infant daughter though she does not reside at home.* The rule that required actual residence of the daughter with her father at the time of seduction, to enable him to maintain a suit therefor, does not prevail in this country. It is only necessary to show that the parent has the legal right, at the time, to command the services of the daughter, and very slight evidence of loss will suffice.

13. If the father, by a valid contract, has divested himself of all lawful control over the services of his daughter, he can not maintain an action against one for getting her with child, but if the contract is such that the father has the legal right, at any time, to control or command her services, then, notwithstanding, she may not reside in his family, and he does not exercise the right of control, he may maintain the action.

14. STATUTE OF FRAUDS—*verbal contract to support and maintain infant child until of age for its services.* If the father of an infant daughter makes a verbal contract with another to support and maintain her until she is of age, in consideration of her services, the contract is valid, and not within the Statute of Frauds, and the father can not maintain an action for the debauching and getting with child such daughter.

15. INSTRUCTIONS—*questions of law should not be left to the jury.* Where it appeared that there was a verbal contract between the plaintiff and another, in regard to the services of the plaintiff's daughter, the question as to what the contract was, was one of fact, for the jury; but the question as to what the legal effect of it was, was a question of law, and it was error to submit both these questions to the determination of the jury by instruction.

16. MITIGATION OF DAMAGES—*offer of marriage by a defendant in a suit for seduction, not competent evidence.* An offer of marriage made by the defendant, in a suit by the father of an infant daughter, for debauching her and getting her with child, is not proper to be considered· in mitigation of damages.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

This was an action on the case, by Murtland, as father, against White, the plaintiff in error, for debauching, getting with child Margaret Ann Murtland. the infant daughter of the former, and causing an abortion. whereby she became sick, the father lost her services and was put to trouble and expense in caring for and curing her. ' The suit was commenced by *capias* from the McDonough circuit court, February 2, 1872. On return of not found, an attachment in aid was sued out February 9, 1872, and levied upon lands in which defendant had a reversionary interest. There was a term of the court in March of that year. On the 18th of that month a declaration was filed, and the cause continued with an *alias capias* to the next term, to be holden August 5, 1872.

Notice of pendency of the suit was duly published in a weekly newspaper of the county, the first insertion being the 17th of May and the last on the 7th of June, 1872. July 26. same year, defendant's attorney gave notice in writing that application would be made at the August term for a change of venue. The petition was not then filed. and not in fact sworn to until the 30th of July. After stating that petitioner could not expect a fair trial. on account of the prejudice of the inhabitants of said county, the petition states "that he did not know that prejudice existed against him among the inhabitants of said county to the extent it does, until after the 25th day of July, 1872."

On the first day of the August term, motion was made for change of venue, on that petition, which was overruled, and exception taken.

August 6, 1872, defendant filed the plea of not guilty, also two special pleas :

1. That, at the time when, etc., the plaintiff was not entitled to the services of said Margaret, as stated in the declaration.

2. That, at the time when, etc., said Margaret was the servant of, and member of the family of one Jane White, who was then and there legally entitled to her whole services.

The first of these special pleas concluded to the country, the second with a verification. Plaintiff demurred specially that each amounted to the general issue. The court sustained the demurrer.

Evidence was given upon the trial tending to show that, in September, 1868, when Margaret was under 12 years of age, the plaintiff, her father, made a verbal agreement with Mrs. Jane White, the mother of the defendant, and who was a widow, that the girl might live with. Mrs. White until she was 18 years of age, providing it was agreeable to all parties, Mrs. White agreeing to send her to school, take care of her, and, at the end of that time, give the girl a cow, a bed, and some other things. There was no contract in writing.

Evidence was also given tending to show that. in December, 1870, while Mrs. White was absent, at a neighbor's, the defendant took the girl, by force, into the parlor, and there, by holding his hand over her mouth, had carnal intercourse with her; that such intercourse was afterward continued until she became pregnant; that, in the spring of 1871, defendant employed a doctor for the purpose, who produced a miscarriage on her, from which she became sick, in May, 1871, whereupon both Mrs. White and defendant absconded, and plaintiff afterward took her home, where she was sick and under a doctor's care for a long time.

For the plaintiff, the court instructed the jury as follows:

"1. If the jury believe, from the evidence in this case, that the defendant, within five years prior to the bringing of this suit, seduced and had sexual intercourse with plaintiff's daughter, Margaret Ann Murtland, and that she was at that time a minor, under 18 years of age, and that. from said sexual intercourse, pregnancy ensued, and that, in consequence thereof, she became sick and unable to perform service, and that, by reason thereof, her services became in any degree or manner lost to said plaintiff, and that the plaintiff in no manner consented to such seduction and sexual intercourse, then the plaintiff is entitled to recover in this case, and the jury should find a verdict in his favor: *Provided*, the jury further find, from the evidence, that plaintiff had not, by contract with Mrs. White, parted with his right to the services of his daughter at the time the injury was inflicted.

"2. If the jury believe, from the evidence in the case, that the defendant seduced Margaret Ann Murtland, the daughter of plaintiff, as is alleged in the declaration in this case, and that plaintiff was entitled to her services at the time, and that, by reason of such seduction, the plaintiff has been deprived of the service of his said daughter, then the plaintiff is entitled to recover in this action whatever damages he has sustained by such loss of service, and also such

further damages as the jury shall deem proper to compensate the plaintiff for the disgrace brought upon himself, his family, and for depriving him of the pure and chaste society of his daughter, and for leading her away from the path of virtue, if such has been the result of the act or acts of defendant complained of in this suit.

" 3.   If the jury find for the plaintiff, they can take into consideration the pecuniary circumstances of the plaintiff and the defendant, and, besides the loss of services, and the disbursements for medical treatment, they can give such additional damages for wounded feelings, mental sufferings, and for the dishonor and disgrace of the plaintiff and his family, as they shall deem, from the evidence, to be a reasonable and just compensation therefor, not exceeding in all the amount claimed in the declaration, and in fixing the amount of such damages, the jury should not, even in mitigation thereof, take into account or consider any offer or proposition of said defendant to marry said Margaret Ann Murtland, made since this suit was brought."

The defendant, at the time, excepted to the giving of each of said instructions.

The court refused the following, asked on behalf of defendant :

" 8.   The court further instructs the jury that, if they believe, from the evidence, that, at the time of the wrongful act or seduction of Margaret Ann Murtland by the defendant, as complained of by plaintiff, said Margaret Ann Murtland was in the actual service of Mrs. Jane White, under a contract or agreement made between Mrs. Jane White and plaintiff, and that, by said contract, said plaintiff agreed that said Margaret Ann Murtland should remain with Mrs. White until she was 18 years old, provided it suited Mrs. White and said Margaret Ann, and render her services to Mrs. White, and that Mrs. White, in consideration of such services, agreed to

board, clothe and school said Margaret Ann, take care of her in sickness, and, at the age of 18, give her certain articles agreed upon; and at the time of the seduction, if any was committed, Mrs. White and said Margaret Ann were both suited, and that said Margaret Ann did not return to her father, but continued with Mrs. White, that such contract was a binding obligation upon the plaintiff, and that plaintiff was not, while Margaret Ann so remained under said contract with Mrs. White, entitled to her services, and could not recover in this case.

"10. The court further instructs the jury that, although they may believe, from the evidence, that Mrs. Jane White left her farm and removed to Chicago about the month of May, 1871, and that plaintiff's daughter then returned to his house, yet that fact would not be such an abandonment of the contract between plaintiff and Mrs. White as would entitle the plaintiff to recover in this case, if the jury also further believe, from the evidence, that the alleged seduction took place prior to the time when Mrs. White did so remove to Chicago, and that, prior to such removal, said contract had not been revoked or abandoned by either party.

"14. The court further instructs the jury that the fact of illicit intercourse between the defendant and plaintiff's daughter, would not, of itself, establish the charge of seduction, but that it is also necessary for plaintiff to prove that his daughter's consent to such illicit intercourse was obtained by flattery, promises or other artifices used by defendant.

"15. The court further instructs the jury that, although they may believe, from the evidence, that an abortion was produced by the procurement of the defendant, by which plaintiff's daughter was delivered of a child by unnatural means, yet if they further believe, from the evidence, that the great object of the defendant in procuring said abortion was, so far as possible, to cover up the shame of plaintiff's daughter, and keep it from being published to the world, then the jury ought not to take the fact of the procurement of said abor-

tion into consideration, for the purpose of increasing the damages against the defendant.

"16.    The court further instructs the jury that, if they believe, from the evidence, that defendant, in good faith, offered to marry plaintiff's (daughter), and that plaintiff refused to permit such marriage, this is a circumstance which the jury may take into consideration in assessing plaintiff's damages, if they shall, from all the evidence in the case, find for the plaintiff."

But the court, on behalf of the defendant, gave the following:

"4.    That this action is brought by the plaintiff to recover damages of defendant for debauching and seducing plaintiff's daughter, whereby she became pregnant, and for procuring an abortion, whereby the plaintiff lost the services of his daughter, which he was then entitled to receive; and before the plaintiff is entitled to recover, he must prove, 1st, that the defendant was guilty of the wrongful acts charged against him in the declaration, or some of them; 2d, that the plaintiff was, at the time of the committing of such wrongful act or acts, entitled to have and receive the services of his daughter; and if such facts are proven, then the jury may allow the plaintiff damages for, not only the value of his daughter's services so lost, but for the value of caring for and nursing her during her sickness, and other expenses incurred and paid by him in consequence of the debauching of his daughter; and in case the defendant actually seduced said daughter, and got her with child, then the jury may assess exemplary damages in this case, as a punishment of defendant, and for the disgrace of the plaintiff and his family, and for the injury to his feelings; but even in that case the jury have no right to allow plaintiff any damages for the injury, loss of character and disgrace of his daughter; and the above rule, and the rule stated in the plaintiff's instructions, are further qualified, that no exemplary damages, or

17—71ST ILL.

damages beyond those proved, can be allowed, unless the defendant actually seduced plaintiff's daughter.  By seduction is meant the causing or inducing of a female to surrender her virtue, and yield herself to carnal intercourse with another, by means of promises, inducements, courtship, flattery or other artifices.  When she yields her virtue, not from any appliances or means of another, but from her own libidinous desires, there can be no seduction.  So, in this case, unless the jury believe, from the evidence, that defendant did, by means of promises, flattery or other artifices, induce plaintiff's daughter to have illicit intercourse with him, they ought not to find a verdict for him (plaintiff) for any greater amount than actual damages which he has proved that he sustained."

The jury found the defendant guilty, and assessed plaintiff's damages at $6000, and the court, overruling defendant's motion for a new trial, gave judgment upon the verdict.  The defendant brings the case to this court by writ of error.

Messrs. MANIER, PETERSON & MILLER, and Mr. H. W. DRAPER, for the plaintiff in-error.

Mr. C. F. WHEAT, and Mr. D. G. TUNNICLIFF, for the defendant in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

We are of opinion that the application made by plaintiff in error, at the August term, 1872, for a change of venue, was properly overruled.

The suit was commenced on the 2d day of February, 1872, by *capias* returnable to the March term, same year.  In determining whether this court will reverse for even an apparent error, it is competent for the court to look into the whole record.  The record conclusively shows that the reason why defendant below did not know the suit was commenced, in time to have made the application at the March term, when

it could have been made, was, that, immediately upon the
development of his criminal relations with the girl, in May,
1871, he absconded from the State, to avoid legal process.
We can not shut our eyes to this fact, and the law will not
permit him to take advantage of his own wrong. Not hav-
ing made the application at that term, he was required to
bring himself within the statute as respects a party making
the application after the term at which it might have been
made, by showing that the causes for which the change of
venue is asked, have arisen or come to his knowledge subse-
quent to the term at which the application might have been
made. Instead of squarely meeting this requirement, his
petition stated that "he did not know that prejudice existed
against him among the inhabitants of said county, to the ex-
tent *it does*, until after the 25th day of July, 1872." This
statement implies that he previously knew that the inhabit-
ants of the county were prejudiced against him, but omits to
state when the prejudice arose, or first came to his knowledge.
The first publication of the notice was on the 17th of May ;
the last on the 7th of June. This was constructive service,
at least when the 60 days expired. So that, if the August
term, which began on the 5th of the month, be regarded as
the first term at which the application, in contemplation of
law, could have been made, having knowledge of the preju-
dice on the 25th of July, he should have applied to the judge
at chambers, so as to save trouble and expense on the part
of the plaintiff in preparing for trial. *Moss et al.* v. *John-
son*, 22 Ill. 633 ; *Kelly* v. *Downs*, 29 ib. 74.

The second point made is, that the court erred in sustain-
ing the plaintiff's demurrer to defendant's special pleas. We
are of opinion that the demurrer was properly sustained, as
the same matters were put in issue by the plea of not guilty.
2 Greenlf. on Ev. sec. 571. "The plea of not guilty puts in
issue both the fact of seduction and the fact that the person
seduced was the servant of the plaintiff." Addison on Torts,
911, citing *Hollaway* v. *Abel*, 7 C. & P. 528; *Torrence* v. *Gib-*

*bins*, 5 Q. B. 297. The pleas amounted to the general issue, and for that reason were bad.

The third point questions the action of the court in certifying to the number of witnesses. That is discretionary, and we can not say the power was abused. Even if it were, it would constitute no ground for reversing the judgment for damages.

The fourth error assigned is, that the court admitted, against defendant's objections, improper evidence. Under this head, counsel make three specifications: 1. Evidence tending to show plaintiff's pecuniary circumstances. 2. Evidence tending to show defendant's pecuniary circumstances. 3. Evidence tending to show that, when the girl was some five months advanced in pregnancy, confessedly the result of defendant's criminal intercourse with her, he caused an abortion to be produced.

As to the first two specifications, an answer may be found in the decisions of this court, for it is the settled law of the court that, in actions by the father for debauching his infant daughter, and getting her with child, for assault and battery, and slander, it is competent to show the pecuniary circumstances and position in society of both plaintiff and defendant. *Grable* v. *Margrave*, 3 Scam. R. 372; *McNamara* v. *King*, 2 Gilm. 432; *Cochran* v. *Ammon et ux.* 16 Ill. 316; *Hosley* v. *Brooks*, 20 Ill. 115.

The court, at the instance of defendant's counsel, instructed the jury that, in assessing plaintiff's damages, the jury should take into consideration defendant's pecuniary circumstances, and his means of paying such judgment as might be rendered against him. While the first branch of this instruction is a clear recognition of the rule upon which the evidence of pecuniary circumstances is admissible, the last branch went farther, in favor of defendant, than the law would justify. The principle upon which the evidence is regarded as competent, is not to ascertain what amount of damages could be collected, but with the view of ascertaining the extent of

plaintiff's injury, and, perhaps, fixing a standard of exemplary damages. We would here observe, that the practice has grown up, though not generally customary, of raising a sort of collateral issue upon the question of pecuniary circumstances, involving detail as to list, kinds and value of property. This is not within the purpose or scope of its admissibility. The inquiry, in the first instance, should be general, whether the party be in poor, moderate or good circumstances. If good, how good? leaving special inquiries to be made upon cross-examination. In this case the plaintiff, in the first instance, gave a catalogue of his possessions, also the number of his children, seemingly more with the view of exciting sympathy in his behalf, than showing the real extent of the injury. It is enough for him to show, in a general way, whether or not he was in poor or in moderate circumstances, and if the defendant, on cross-examination, choose to enter upon details, that is his right, and the consequences may be his, also.

The third specification involves the right of plaintiff, under his declaration, to give evidence tending to show the abortion. His counsel insist that it was too remote, and had no necessary connection with the real *gravamen* of the action, even if defendant caused its production. It was, they say, a separate and distinct wrong.

This particular wrong is specifically charged in the declaration. The plaintiff had his election to bring his action in trespass or *case*. He brought it in the latter form. If he had brought trespass, we perceive no reason why he could not have added a separate count for the abortion, because, upon the plainest principles of the common law, if somebody else had gotten the girl with child, and the defendant had caused the abortion, whereby she became sick, and plaintiff lost her services, the action would lie, because, as to plaintiff, she could not consent to that, any more than to the carnal intercourse. Chitty, speaking of the action of trespass, says: " So, it lies for an injury to the relative rights, occasioned by

force, as for menacing tenants, servants, etc., beating and wounding, and imprisoning a wife or servant, whereby the landlord, master or servant has sustained a loss. though the injury, the loss of service, etc., were consequential, and not immediate. It lies for criminal conversation, seducing away a wife or servant, or for debauching the latter, force being implied, and the wife or servant being considered *as having no power to consent;* and a count for beating the plaintiff's servant, *per quod servitium amisit,* may be joined with other counts in trespass, and though it has been usual to declare in case for debauching a daughter, it is now considered to be preferable to declare in trespass." 1 Chit. Pl. 168.

If plaintiff had declared in trespass, and, after alleging the assault, carnal intercourse and getting her with child, had then alleged, in the same count, the causing the abortion at a subsequent time, without averments connecting this with the original trespass, the count might have been demurrable for duplicity; but if defendant, without demurring, took issue upon it, he could not exclude evidence of that trespass. In actions on the case, much broader scope is allowable, and the count is not subject to the same technical rules as to singleness, as in trespass.

We have seen that, as to the carnal intercourse, the consent of the daughter is of no avail, so far as the father is concerned, because, as in the case of the wife, she is incapable of consenting. For the same reason, without regard to the criminal law, she is incapable of consenting to an abortion. The act of the defendant in causing it, would, therefore, be illegal, and, as to the father, amount to a trespass, which, if followed by sickness and loss of service, would be actionable. Now, in legal contemplation, is there no connection between the original wrong of debauching and getting her with child, and the act of getting rid of the child, in order to conceal and avoid detection of such original wrong? According to the common law, the mere act of carnal intercourse with the daughter does not give the right of action in

the father. There must concur the pregnancy, the sickness incident thereto, and, theoretically, the consequent loss of service, but, *in reality*, the loss of the comfort and society of the daughter, and of the honor of the father and his family; so that the debauchery, the pregnancy, the sickness consequent thereupon, involving the disability and disgrace of the daughter, are all constituents of the cause of action. Can it, therefore, be successfully maintained that this defendant, having thus unlawfully violated the rights of the father, but who, in order to conceal and escape the consequences of that wrong, has led, or caused that daughter to be led, into the commission of this great self-abuse, seriously injurious to her, both morally and physically, and thereby precipitated and aggravated that sickness, which, in the ordinary course of nature, would follow the original wrongful act, may be permitted to say, in this action, that this second unlawful interference is so disconnected from the original wrong that it forms no part of it? The substance of it is, that, for the defendant's own protection from the consequences of his original wrong, he subjects this daughter to another, which carries the corruption of her morals to an extreme degree, imperils her health and life, and exposes her to a deeper disgrace; and yet it is insisted that the fact can not be given in evidence as an aggravating circumstance, because it is wholly disconnected from the cause of action. We can not concur in that view. The *res gestæ* here includes the debauching plaintiff's daughter, the consequent pregnancy, the forcible birth, and consequent sickness and loss of service. All are ingredients of causes of action, though all are not indispensable ingredients.

In *Klopfer* v. *Bromme*, 26 Wisconsin R. 372, it was held that evidence of an abortion produced by the defendant is not inadmissible on the ground that the damages it tends to prove are too remote.

The fifth error assigned is, in sustaining the plaintiff's objection to defendant's question to witness White: "If he

had observed and was acquainted with the disposition of Margaret Ann Murtland, while she lived at Mrs. White's, and, if so, to state whether or not she was a pert, forward girl?" There is one obvious objection to this question, even conceding that it called for particular acts of immorality or indecorum, and that is, that it did not confine the inquiry to anything occurring previously to defendant's ·misconduct. Her general character for chastity must be considered as involved in the issue, and testimony of others than herself might be introduced, to show their own criminal intercourse with her, and the time and place; but, notwithstanding this evidence, if the jury are satisfied, from the whole evidence, that the defendant is the father of the child, their verdict must be for the plaintiff, though, perhaps, for diminished damages. 2 Greenlf. on Ev. sec. 577. But evidence of particular·acts of immorality or indecorum, as well as proof of general bad character, must be confined to what occurred *previously* to the defendant's misconduct. Ib. note 1; Taylor on Ev. 327; *Elsam* v. *Fawcett,* 2 Esp. 562.

But the question was improper on another ground. It called for no acts, but the mere opinion of the witness as to her disposition. She might have been both pert and forward without being lewd.

The sixth assignment of errors questions the correctness of the instructions given on behalf of plaintiff below.

The first instruction told the jury, in substance, that, if defendant seduced and had sexual intercourse with plaintiff's daughter, Margaret Ann Murtland, and the latter was at the time a minor, under 18 years of age; that if pregnancy ensued such intercourse, and, in consequence thereof, the daughter became sick and unable to perform service, and that, by reason thereof, her services became in any degree lost to plaintiff; that he in no manner consented to such seduction and intercourse, then the plaintiff is entitled to recover, and they should find a verdict in his favor, "provided the jury further find, from the evidence, that plaintiff

had not, by contract with Mrs. White, parted with his right to the services of his daughter, at the time the injury was inflicted."

It is an undisputed fact in the case, that, at the time of the alleged seduction, and when the abortion was produced. the daughter, though a minor, was in the actual service of Mrs. White, defendant's mother. She was at least the *de facto* servant of Mrs. White.

While there is some seeming conflict in the English authorities, the general rule requires that the daughter, at the time of the seduction, must be in the actual service of, or at least living with, her father. That rule, so far as it requires actual service, or actual residence with the father at the time, has been relaxed by American courts, and the general rule here is, that it is only necessary to show that the parent has the legal right, at the time, to command the services of the child, and very slight evidence of loss will suffice. Sedg. on Dam. (6th Ed.) 681–2, and cases cited in notes.

Such is the doctrine of *Anderson* v. *Ryan*, 3 Gilm. 583, so far as the question was involved. See, also, the recent case of *Kennedy* v. *Shea*, 110 Mass. R. 147, and cases there cited; *Mulvehall* v. *Millard*, 11 N. Y. (1 Kern.) 343.

In *Ball* v. *Bruce*, 21 Ill. 161, the court say : "If the minor be *legally* under the control of, and may be required to perform the services for, the plaintiff, that gives the right to maintain the action." It was also held in that case that the plaintiff might recover where the person seduced did not reside with him at the time of the seduction, if the defendant had, by fraud and deceit, obtained possession of her as a servant, with the intent to seduce her, and he, in fact, did seduce her.

The possession was obtained under a contract with her master, who previously had a right to her service. The principle underlying that proposition is the same as that above stated. By the fraud, the contract was voidable, if not actually void, and, whether the one or the other, the plaintiff

had a legal right. at any time after it was made, to avoid it, and command the services of his servant. This same doctrine is recognized by the English courts, and is more consistent with the American rule, that it is only necessary that the father should be in a position, under all the circumstances, to exercise legal control of the child's services, than with the rule requiring actual residence with the father at the time. See Addison on Torts (4th Ed.) 909; *Speight* v. *Oliviera,* 2 Stark. R. 495.

It was competent for the plaintiff to contract with Mrs. White that Margaret, being a minor, should reside with, and be employed by, Mrs. White for a day, a month or any longer term, so that the time did not extend beyond the period of the child's emancipation from the father, which might take place as well on the father's death as on the daughter's arriving at the age of 18 years. *Ford* v. *McVay,* 55 Ill. 119.

If the contract of plaintiff with Mrs. White was valid, and the legal effect of it was, to divest the former of all lawful control over the services of his daughter, then, by the settled principles of the common law, as we understand it, the plaintiff could not maintain this action; but if the contract was such that plaintiff had the legal right, at any time, to control or command her services, then, notwithstanding she did not actually reside in his family, and he had not exercised the right of control, he may maintain it, so far as this issue is concerned.

The contract, as testified to by plaintiff, presents two aspects: one, whether, it not being in writing, it was, by its terms, not to be performed within a year, and, therefore, within the Statute of Frauds; the other, whether he, in fact, reserved the right to terminate the arrangement at his own pleasure. If it was within the Statute of Frauds, it was not available as a contract, and plaintiff would have the legal right to treat it as not existing, and control the services of his child at any time he chose to do so.

Upon this question, some nice distinctions are made by the authorities. In *Hill* v. *Hooper*, 1 Gray (Mass.) 131, where the plaintiff agreed with the defendant that his son, then a minor between 15 and 16 years of age, should work for them in their business till he was 21 years of age, the defendant paving for his services a certain sum semi-annually to the father, it was held that this agreement was within the Statute of Frauds, on the ground that the defendant contracted for the benefit of the whole five years' service, and the death of the son in the interim would only defeat the performance.

But in *Peters* v. *Inhabitants of Westborough*, 19 Pick. 365, which was assumpsit for expenses incurred in the support of a pauper of the defendant town, parol evidence was offered to show that plaintiff had taken the pauper into his family, in pursuance of an agreement between the father and the plaintiff, that the latter should support her till she was 18 years of age (she being then 11), in consideration of her services. It was held that the agreement was not within the Statute of Frauds. Here, there was no letting of the infant's time, but a mere substitution of the plaintiff for the child's father, as to the duty of supporting her, *during her lifetime*, until she was 18. The contract might have been performed within a year, because the child might have died within that time. To the same effect is *Wiggins* v. *Keizer*, 6 Ind. R. 252; Browne on Frauds, sec. 276.

If the contract was of this latter character, then, so far as the plaintiff's legal right to control the services of the girl is concerned, the agreement being valid, it would bar his control, and, consequently, his right of action; but the agreement being verbal, what it was, would be a question of fact for the jury; the legal effect of it, would be one of law for the court.

The proviso to the instruction under consideration, submitted the questions both of law and fact to the determination of the jury, upon the most difficult point in the case. So, as to the other aspect of the agreement. If the jury should

find that the character of the agreement was one for support, in consideration of the child's services, and, therefore, not within the Statute of Frauds, yet if they should further find, from the evidence, that it was to continue only during the pleasure of plaintiff and Mrs. White, or that he expressly reserved the right to terminate it whenever he chose to do so, then, in that view, he would be considered as having the legal right to control or command the services of the child, and, the other elements of the cause of action being found in his favor, he would be entitled to maintain the action, whether he had exercised such right of control before defendant's misconduct or not.

Plaintiff's third instruction is palpably erroneous. It assumed, without proof, that plaintiff had made disbursements for medical treatment. It told the jury that, if they found for the plaintiff, they could take into consideration the pecuniary circumstances of the plaintiff and defendant, " and, besides the loss of services and *the disbursements for medical treatment*, they can give such additional damages," etc. The question, whether he had been subjected to disbursements for medical treatment, is not submitted to the jury, to be found as a fact, in any of plaintiff's instructions.

Upon the principle that plaintiff's daughter was incapable of consenting, the fact that she yielded without force or seduction, would not constitute a bar to the action. Still, it seems to be settled, and properly so, that, if a seduction be not proved, damages for seduction should not be given. Sedg. on Dam. p. 682, and notes.

Evidence was given tending to show that the first act of intercourse was accomplished by means of force. There is, however, no testimony on that point but her own, and her subsequent conduct is hardly consistent with her story, if she was really a virtuous girl, and her virtue overcome by force; but if the jury should be satisfied, upon another trial, after considering all the circumstances, that her statement is true, then the defendant's conduct would merit at least as high a

measure of damages as if there had been seduction, and the action could be maintained as if there had been seduction. See *Kennedy* v. *Shea, supra.*

It has been urged that an offer of marriage, made through defendant's attorney on his behalf, after suit brought, should have been considered in mitigation of damages, and that the court erred in instructing the jury that it could not. If such a rule should be recognized in this case, it would be applicable to every other. There seems to us to be no sound principle upon which such a doctrine can rest. We will not stop to suppose cases of a class frequently occurring, but any one may conceive of them, where, from the character of the defendant, the fraud, deception and hypocrisy used in accomplishing the seduction, such an offer would be but adding insult to injury. The authorities, so far as there are any upon the question, are against its admissibility. Sedg. on Dam. 683; *Ingersoll* v. *Jones*, 5 Barb. S. C. R. 661.

We perceive no error in refusing instructions asked for defendant, but, inasmuch as the damages awarded are very large, if not excessive, we feel constrained to reverse the judgment, for the errors pointed out, believing that it ought to go before another jury.

*Judgment reversed.*