URBANEK vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

REVERSAL OF JUDGMENT: *(1) For refusal of correct instructions. (2) Upon weight of evidence. (3) For admission of improper evidence.*
VERDICT: *(4) Special verdict held not evasive. (5) Jury may retire to further consider verdict.*

1. The refusal of special instructions correct in principle and applicable to the case, *held* no error where the same instructions were substantially given in the general charge.

2. While in actions for injuries from trains at railroad crossings, testimony that the witnesses *did not hear* a signal given by blowing the whistle, is not, as a rule, so conclusive as testimony of the same number of witnesses that they *did* hear it, yet this rule may be greatly modified in a given case by the character and interest of the witnesses, their means of knowledge and manner of testifying, and other circumstances; and in this case there is no such preponderance of evidence against the special finding of the jury on that question, as will warrant a reversal of the judgment.

3. Where the objectionable portion of a witness's evidence was not responsive to any interrogatory, and there was no motion to exclude it from the jury, it is not ground of reversal.

4. To the questions, "Could the plaintiff have heard the whistle? If he had stopped his team, etc., could he have heard it?" the jury answered, "He might or might not." *Held*, that such an answer to *such questions* is not evasive.

5. It is not error to allow the jury, after coming in with a verdict, to retire for the purpose of further considering and perfecting it.

APPEAL from the Circuit Court for *La Crosse* County.

Action for injuries to the plaintiff's person and to his horses and wagon, from a train of cars on defendant's road. At the time of the accident, plaintiff was driving his team across said road upon a public highway, and the complaint alleges that the accident was caused by defendant's failure to give a reasonable and proper signal of the approach of the train.

It appeared from the evidence at the trial, that the highway in question is crossed by the Chicago & Northwestern Railway at a point about 341 feet south of defendant's crossing; and that plaintiff, driving northward, had crossed the track of the former road a few moments before the accident. It also appears that defendant's train was approaching from the west, and that its road crosses another highway at a point named Wolf's crossing, a half mile west of that at which the accident occurred.

There was a special verdict consisting of answers to eighteen interrogatories. These, with the answers as first given, were as follows:

"1. Q. If plaintiff had used his eyes, could he, at any place

on the highway, have seen the train as it approached the crossing? A. There is a point on the highway where the train could be seen, if the relative positions of plaintiff and train occurred at those points at the same time.

" 2. Q. Did the plaintiff listen for the train? If so, where was he when he so listened? A. He did listen, as he approached the crossing.

" 3. Q. Was there any place on the highway near the crossing of the C. & N. W. Railway, or between that crossing and the one where plaintiff was injured, from which defendant's train could have been seen by the plaintiff coming on their track, between the curve west of Wolf's and the crossing where the injury happened? A. There was a point near the C. & N. W. Railway, from which plaintiff might have seen defendant's cars, provided plaintiff was at said point when defendant's cars occupied a certain position east of Wolf's crossing.

" 4. Q. If you answer " yes," where was it? A. Where the proper position was occupied by plaintiff and defendant's cars, as in the preceding answer.

" 5. Q. Did the engine whistle at or near Wolf's crossing? If " yes," where, east or west of the crossing? A. Yes, west of Wolf's crossing.

" 6. Q. If it did so whistle, could the plaintiff have heard it had he been listening and paying attention? A. Plaintiff did not hear it.

" 7. Q. If plaintiff had stopped his team at any point between the crossing of the C. & N. W. Railway and that of the defendant, and had listened, could he have heard the train coming, and avoided the accident? A. He might or might not until too late to get out of the way, in case of such delay between the two roads.

" 8. Q. Which came to the crossing first, the plaintiff or the defendant's engine? A. Nearly at the same time.

"9. Q. Did the plaintiff collide with the defendant's engine?
·A. No, but with the cars.

"10. Q. Did the defendant's engine collide with the plaintiff? A. No.

"11. Q. Did the defendant's train give a signal by whistling as it approached the crossing on which plaintiff was injured? A. No.

"12. Q. What was the weather on the day when the accident happened? A. Fair, with light wind.

"13. Q. For how long a distance west of this crossing did defendant's road run in a straight line? A. Nearly half a mile.

"14. Q. Did plaintiff know that the crossing was dangerous? A. Yes.

"15. Q. If plaintiff had used his ears, could he at any place on the highway have heard the train as it approached the crossing? A. No.

"16. Q. Did plaintiff exercise all necessary care and diligence in approaching the crossing? If you say "yes," explain what diligence and care he used. A. Yes, by listening and looking and careful driving.

"17. Q. Was defendant negligent in approaching the crossing? A. No.

"18. Q. If you say "yes," in what did such negligence consist? [No answer.]"

The jury also found for the plaintiff generally, and assessed his damages at $2,745.

Plaintiff's counsel asked that the jury might be sent out to reconsider their answer to the 17th and 18th questions, on the ground that they had evidently misunderstood them; and the foreman stated that the jury understood the questions as referring to negligence on the plaintiff's part. The jury were accordingly permitted to retire and reconsider their verdict; and on their return answered the 17th question in the affirmative, and the 18th as follows: "By not whistling

JANUARY TERM, 1879.　　　63

Urbanek vs. The C., M. & St. P. R'y Co.

for the crossing before reaching it." On a further suggestion by plaintiff that the jury had misunderstood the 6th question, they were again sent out, against defendant's objection, and returned with the following answer to that question: "He might or might not have heard it." The verdict, amended in the particulars above stated, was accepted by the court against defendant's objection. Afterwards, during the same term, defendant moved for a new trial on the following grounds: That the verdict was contrary to the law and the evidence; that the first answer to the 6th question was equivocal, that the court erred in sending the jury out to make a new answer, and that the final answer was indefinite and equivocal; that the answer to the 7th question was indirect, equivocal and evasive; that the court erred in sending the jury out to reconsider their answers to the 17th and 18th questions; that the damages were excessive; and that the court erred in giving certain instructions, and in refusing those asked by the defendant. The motion for a new trial was denied, and judgment rendered for the plaintiff for the amount of damages assessed by the jury; from which the defendant appealed.

For the appellant, there was a brief by *Melbert B. Cary*, and oral argument by *J. C. Gregory*. They contended, 1. That the answers to the 6th, 7th and 8th questions were evasive, and that this was ground for reversal. *Davis v. Farmington*, 42 Wis., 425; *Carroll v. Bohan*, 43 id., 218. 2. That the answers affirming that plaintiff was in the exercise of proper care and diligence, were inconsistent with those made to the 9th and 10th questions, which find that he collided, not with the engine or tender, but with one of the cars. It is a sheer impossibility for a man, under the circumstances, to drive thus against the middle of a train, while in the exercise of ordinary care. And the answers to the 9th and 10th questions, being simply statements of an undisputed fact, touching one of the circumstances of the collision, must be accepted as true rather than the other answers, which are general conclu-

sions based upon a great conflict of testimony and opinion. *Bach v. Parmely*, 35 Wis., 238; *Lemke v. Railway Co.*, 39 id., 449; *Haas v. Railway Co.*, 41 id., 44. 3. That the general verdict, and several of the answers of the special verdict, were contrary to the evidence. The jury, for example, found that defendant's negligence consisted in not whistling for the crossing before reaching it. All the testimony for the plaintiff upon that issue was purely negative, and there was abundant testimony both of defendant's employees (who were the persons most likely to know the fact), and of other and disinterested witnesses, showing that the whistle was blown for that crossing. The rule as to negative and affirmative evidence is well settled. *C. & A. Railroad Co. v. Gretzner*, 46 Ill., 75; *Culhane v. Railroad Co.*, 60 N. Y., 133. 4. That, from the facts and circumstances in evidence, the court should have said, as a matter of law, that plaintiff *could not have been* in the exercise of ordinary care at the time of the accident. *Reynolds v. Railroad Co.*, 58 N. Y., 248; *Mitchell v. Railroad Co.*, 64 id., 655; *Wilcox v. Railroad Co.*, 39 id., 358. 5. That the court erred in refusing to charge as requested by defendant, in respect to plaintiff's contributory negligence. 6. That the court erred in permitting a witness for plaintiff to testify in regard to an experience of his own in crossing defendant's track about a week after the accident.

*C. L. Hood*, for the respondent.

Orton, J. This cause seems to have been very fully and ably tried, and the special findings of the jury cover all the material facts, and are consistent with their general verdict for the plaintiff, and there is no such preponderance of proof against them as would warrant this court in finding adversely to the jury on any material question of fact.

The special instructions asked by the respondent were given substantially in the general charge, and it was not error to refuse to give them in this special manner, although they

were correct in principle and applicable to the case, if they were so given substantially in the general charge. *Karasich v. Hasbrouck et al.*, 28 Wis., 569.

On the question whether any signal was given by the defendant, by blowing the whistle on the train approaching the crossing when the accident occurred, it is true, as a rule, that negative testimony, or the testimony of witnesses in the vicinity that they did *not* hear the whistle at that time and place, is not as conclusive as the testimony of the same number of witnesses that they *did* hear it; but this rule may be greatly modified in a given case, by circumstances — the character and interest of the witnesses, their means of knowledge and manner of testifying, and other matters forming the test of credibility, which the jury are presumed to have considered; and this court might do great injustice by applying this rule as an inflexible one, without these tests of credibility, and without reference to modifying circumstances.

In this case, the situation of the witnesses near the crossing, in full view of the advancing train, with their attention specially directed to the train, and to the signal or want of signal by blowing the whistle, might make their testimony as conclusive that such signal was *not* given, as the testimony of the same number of witnesses, whose situation and circumstances were less favorable to positive knowledge, that it *was* so given.

In respect to the testimony of Otto Botmer, detailing the circumstances of his own attempted crossing of the railroad at the same place when a train was approaching, about a week after this occurrence, that which was objectionable was not responsive to any question asked by the counsel of the plaintiff, and it is very likely that the court would have excluded it from the consideration of the jury upon request; but no such request was made, and it is now nominally in the case, not by the error of the court, for the court did not act, and was not called upon to act, upon the question; and not by the fault of the plaintiff, for he did not ask for such testimony; but by the

neglect of the defendant in not asking for its exclusion. The witness had been asked to "state the circumstances," and the defendant's objection to the question had been sustained by the court, and then the witness stated the circumstances improperly and of his own accord, while answering questions which, though objected to, were clearly proper, but which did not call for any such objectionable evidence.

The jury were substantially informed by the ruling of the court upon the question, that these circumstances were improper evidence, and that they should not be considered by them; and it is not to be presumed that this evidence so given had any weight with the jury.

Objection is taken to the special finding, or want of finding, of the jury, in response to the questions, " Could the plaintiff have heard the whistle?" " If he had stopped his team, etc., could he have heard the whistle?" The answer is, " He might or might not."

It requires no argument to show that it was impossible for the jury to give direct and positive answers to these questions. The most the jury could do, would be to give their opinion, and their opinion was not asked. The plaintiff's physical ability to hear the sound of the whistle from the place he occupied, depended upon many facts and conditions, and these facts and conditions would have been the proper subjects of their finding if they had been proved; but an opinion founded upon no proof of all the facts and conditions required for the basis of any opinion, would be of no value; and if founded upon all such facts and conditions when actually proved or known, it is a mere *opinion* at best, and no such *fact* as could be the subject of a special finding.

The answer of the jury was, substantially, that they did not know whether the plaintiff could have heard the sound of the whistle, situated as he was at the time, and under all the possible circumstances of his situation. The answer is not evasive, so much as an expression of inability to answer the question at all.

Objection to such a question, asking for an impossible answer, would have been more tenable.

Exception is taken to permitting the jury to amend their verdict. It is not error to allow the jury to again retire to consider and perfect their verdict. *Hugh v. Johnson*, 18 Wis., 72.

Some other exceptions appear in the record, but of no substantial importance as affecting the result, and which were not pressed on the argument.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.