EILERT VS. THE GREEN BAY & MINNESOTA RAILROAD COMPANY.

*February 24 — March 9, 1880.*

RAILROADS: NEGLIGENCE: EVIDENCE. *(1) Court and jury. (2) Evidence that failure to signal near crossing was negligence. (3) Negative and positive testimony.*

1. In an action against a railway company for injuries received by plaintiff, from collision with a train, while driving his team and wagon across defendant's road, the court cannot say, as matter of law, that ordinary care required plaintiff to stop his team and listen for the train; or that trotting his team to within a rod of the track was negligence, even though he knew that the train usually passed the crossing at about that time in the day; but these questions are for the jury.

2. Evidence that, by reason of excavations, the formation of the land in the vicinity, and the presence of timber near the crossing, it was somewhat difficult for persons near it on the highway to see an approaching train, would support a finding by the jury that a failure to signal the approach of the train (by bell or whistle) was negligence, although such signals were not then required by *statute.*

3. Such a finding may be supported by mere *negative* testimony, notwithstanding positive testimony on defendant's part that signals were given. *Urbanek v. Railway Co.,* 47 Wis., 59.

APPEAL from the Circuit Court for *Jackson* County.

The plaintiff was driving his team and wagon in a public highway crossing the railway track of the defendant company in Clark county, and, as he was crossing the track, collided with a passing train. He received severe personal injuries, his horses were killed, and his wagon was broken by the collision. This action was to recover damages therefor. The complaint states the particular circumstances of the accident, and avers due care to avoid it on the part of the plaintiff, and the negligence of the defendant. The answer is a general denial, and a charge that the injuries resulted from the negligence of plaintiff. No question arose on the pleadings.

No instructions were proposed on behalf of the defendant, and no exceptions were taken to the charge of the court. The following extract from the bill of exceptions gives the verdict,

and the circumstances under which the special questions were submitted to the jury:

"The court, at the request of defendant's counsel, made at the close of the testimony, directed the jury to find a special verdict; and the following questions were submitted to the jury, and answers made as follows, all of which questions were framed by defendant's counsel, and submitted to the jury at their request: '1. Was the bell rung and the whistle blown on that engine at the usual place before reaching the crossing? *Answer.* No. 2. Was the property and person of the plaintiff injured, on the day alleged, by the train colliding with the plaintiff's team crossing the track? *Answer.* Yes. 3. Had the plaintiff reason to expect the train along at the time he was approaching the track, and was he looking for it? *Answer.* Yes. 4. Did the plaintiff, on approaching the crossing, trot his team to within one rod, or a rod and a half, of the railroad track? *Answer.* Yes. 5. Did plaintiff, at any time after leaving the creek where he watered his horses, come to a full stop and listen for the train? *Answer.* No. 6. Was plaintiff familiar with that crossing, and the general lay of the ground about there? *Answer.* Yes. 7. If plaintiff had come to a full stop at any point within a reasonable distance of the crossing, and listened, could he have heard the rumbling of the train? *Answer.* No. 8. Was plaintiff prudent or careful in driving his team so near the track as he did, without stopping to listen for the coming train? *Answer.* Yes. 9. If you answer that the bell was not rung, and the whistle not blown, as the train approached the crossing that day, then answer this: Was the failure to sound the whistle or ring the bell the cause of plaintiff's accident? *Answer.* Yes.' The jury also brought in a general verdict as follows: 'We . . . find for the plaintiff, and assess his damages at the sum of $1,443.'"

The court denied motions made in proper order on behalf of the defendant — *first*, for a nonsuit; *second*, for judgment

in its favor on the special verdict; and *third*, for a new trial. From a judgment in favor of the plaintiff, defendant appealed.

The appeal was submitted on a brief of *Theo. G. Case*, as attorney, with *H. J. Huntington*, of counsel, for the appellant, and briefs of *R. J. MacBride* for the respondent.

LYON, J.   We think the special findings are not inconsistent with each other, or with the general verdict for the plaintiff. One of those findings negatives any want of ordinary care on the part of the plaintiff in driving his team so near the railway track as he did, without stopping to listen for the coming train. The jury also found specially that the bell was not rung and the whistle blown on the engine at the usual place before reaching the highway crossing where the collision occurred, and that the failure to do so was the cause of the injuries complained of.   There is no special finding that such failure was negligence; but that is necessarily included in the general verdict for the plaintiff.   Under the charge of the court, which contains a clear and accurate statement of the law applicable to the case, and to which no exception was taken, the jury must have found that the failure to give those signals of danger at the proper time was negligence.   Otherwise they could not have found for the plaintiff.

The jury having found that the injuries complained of were caused by the negligence of the defendant in failing to give the proper signals, and that the plaintiff was guilty of no negligence contributing thereto, the judgment cannot be disturbed unless we can say, either, *first*, that the evidence proves conclusively that the plaintiff was guilty of negligence contributing to produce such injuries; or, *second*, that there is no testimony tending to show that the injuries were the result of the negligence of defendant's employees operating the train in question.

1. We cannot say, as a matter of law, that ordinary care required the plaintiff to stop his team and listen for the train,

or that the mere fact that he trotted his team to within a rod or a rod and a half of the track was negligence. These were questions for the jury. It was undoubtedly the duty of the plaintiff to watch for the train, which he knew usually passed the crossing about the time he reached it, and to approach the track with due and proper care, and the learned circuit judge so instructed the jury in the following pointed and emphatic language: "Danger is necessarily attendant upon the opera·tion of railroad trains, and one may not carelessly expose himself to such danger; but care commensurate with the dangers reasonably to be apprehended is the duty of every person who is about to cross the track of a railroad. One about to cross a railroad track near the time when he should reasonably expect a passing train, must be careful, in order to avoid accident. He is bound to both look and listen, to learn whether the train is approaching. He must be alert with both eyes and ears; so much at least of care and caution common prudence requires of every person about to cross the railroad near the time when he may reasonably expect passing trains. Failing this, he is himself in fault; and if by such care he might have heard the approaching train, and avoided the accident, his fault helps or contributes to produce such accident as may happen to him. In that case he cannot recover for injuries which he may receive, although the proper signals have not been given of the approach of the train. If, by the use of reasonable, proper care and caution, by looking and listening, he might learn of the approaching train in time to avoid the accident, he cannot recover."

The plaintiff testified that he looked for the train just before he approached the crossing, and under the above instructions the general verdict for the plaintiff must be regarded as a finding that he did so, and that he used all reasonable and proper care to avoid the accident. It must be conceded that there is considerable testimony preserved in the bill of exceptions tending to show that the plaintiff was negligent; and for

one I should be better satisfied with the verdict had it been for the defendant. But certainly there is testimony tending to show that the plaintiff exercised due care; and no act or omission on his part which we can say was negligence, is established by uncontroverted evidence. Under such circumstances, whatever may be our opinion as to which way the evidence preponderates, it is settled that the verdict cannot be disturbed.

In *Urbanek v. The Chicago, Milwaukee & St. Paul Railway Co.*, 47 Wis., 59, which was an action like this, the evidence and special findings showed that Urbanek drove his horses against a passing train in broad daylight; yet we found ourselves compelled by settled rules of law to hold, under the circumstances of the case, that we could not properly disturb a judgment in his favor, based upon a finding that he was in the exercise of due and proper care when injured.

2. When the plaintiff was injured, there was no statute, as there now is (R. S., sec. 1809), requiring the bell of the engine to be rung or the whistle sounded when crossing highways outside of cities and villages; yet many of these crossings are so situated that such signals of danger are absolutely essential to the safety of travelers on highways passing over the railway tracks, and the omission to sound the signals at such crossings is negligence. In this case there is testimony tending to show that, by reason of excavations, the formation of the land in the vicinity, and the presence of timber or brush near the crossing, there is some difficulty in seeing a train as it approaches the crossing. We think this testimony sufficient to support the finding that the failure to give the signals was negligence. We have already seen that the jury must have so found.

In *Urbanek v. Railway Co.*, *supra*, in which, as in this case, the injuries were received before section 1809, R. S., was enacted, the negligence found was the omission to whistle for the crossing before reaching it. The situation and surroundings of that crossing are not unlike those of the crossing where

this plaintiff was injured.   We sustained the finding in that case, and must do so in the present case.

The criticism that the testimony tending to prove the signals were not given is negative, while there is positive testimony that they were given, was made in the Urbanek case, and is sufficiently answered by Mr. Justice ORTON in the opinion in that case.   His observations are directly to the point, and need not be repeated.   It is sufficient to say that the testimony of the omission to give the signals, although negative in form, comes from persons in the neighborhood of the crossing where the accident happened, and is entitled to some weight.   Hence it was proper testimony to be considered by the jury.   The jury have found the omission to give the signals; their verdict is supported by the testimony; and this court cannot disturb it, merely because, as a general rule, positive testimony is entitled to more consideration than mere negative testimony.

*By the Court.* — The judgment of the circuit court is affirmed.