Draper vs. Baker.

## DRAPER vs. BAKER.

*November 6 — November 25, 1884.*

ASSAULT AND BATTERY: EVIDENCE: DAMAGES. *(1) .Reputed wealth of defendant.* (2) Res gestæ. *(3) Positive and negative testimony: Instructions. (4) Excessive damages.*

1. In an action for assault and battery where punitory damages are recoverable, the financial condition of the defendant may be shown by evidence of his reputed wealth.

2. The assault and battery complained of being that the defendant spat in plaintiff's face, a witness who had testified that he saw defendant spit towards the plaintiff and, he thought, towards her face, might properly be asked, "Did you see her make any motion as if spittle had struck her in the face?"

3. An instruction that "positive testimony of a small number of witnesses that they saw or heard a given thing occur will outweigh the negative testimony of a greater number of witnesses that they did not see or hear it, provided the witnesses are equally credible; but in connection with this instruction should be considered the relative means or opportunity of the several witnesses to see or hear the occurrence, and it should be carefully kept in mind that it only applies when the witnesses are equally credible," — is *held* to have been proper, where several witnesses testified that they saw the defendant spit upon the plaintiff and several witnesses testified either that they did not see him spit upon her or that he did not spit upon her.

4. A verdict of $1,200 damages for an assault and battery upon the plaintiff by spitting in her face, is *held* not so large as to induce this court to believe that the jury were actuated by passion, prejudice, or other improper motive.

APPEAL from the Circuit Court for *Walworth* County.

The facts are sufficiently stated in the opinion. There was a verdict for the plaintiff, *Alma J. Draper*, assessing her damages at $1,200, and from the judgment entered thereon the defendant appealed.

For the appellant there was a brief by *E. P. Smith* and *Nath. Pereles & Sons*, and oral argument by *Mr. Smith*.

For the respondent there was a brief signed by *Merton & Kearney*, and oral argument by *Mr. Merton*. They argued, among other things, that evidence of defendant's pecuniary circumstances being admissible, it was properly confined to *general reputation*. *Kniffen v. McConnell*, 30 N. Y. 285; *Smith v. Sherwood*, 2 Texas, 460; *Rippey v. Miller*, 11 Ired. Law, 247; *Morse v. A. & S. R. R. Co.* 10 Barb. 624; *Wilson v. Middleton*, 2 Cal. 54; *Pike v. Dilling*, 48 Me. 539; *Nye v. Merriam*, 35 Vt. 438; *Birchard v. Booth*, 4 Wis. 67; *Barnes v. Martin*, 15 id. 240; *Whitfield v. Westbrook*, 40 Miss. 311; *Meibus v. Dodge*, 38 Wis. 300; *Winn v. Peckham*, 42 id. 493.

TAYLOR, J. This is an action to recover damages for assault and battery. The charge was that the appellant spit in the face of the respondent in the court house at Juneau, Dodge county, in the presence of a large number of persons. The particulars of the transaction are fully stated in the bill of exceptions. There is a good deal of conflicting evidence as to the fact of the assault, but the record shows that the questions of fact were properly submitted to the jury, and there is an abundance of evidence to sustain the finding of the jury that the assault and battery was committed by the defendant as set out in the complaint, and their verdict cannot be reversed upon that question.

The learned counsel for the appellant claims that the circuit court erred in the admission of evidence as to the reputed wealth of the defendant. Upon the trial the witness Ackley,

who testified that he had known the defendant for a long time and lived about two miles from him, was asked the following question: "Do you know anything of his reputed wealth?" This was objected to by the defendant, (1) because it was immaterial; (2) because the defendant's financial condition cannot be shown by his reputed wealth; (3) because the question ought to be confined to some particular time. The objection was overruled, and the witness answered "that he did not know definitely, but that in his opinion he would be worth $40,000 or $50,000; that he was reputed to be worth $50,000. He is not reputed to be worth $50,000 at the present time. I don't understand that is his reputation at present, but that he was reputed to be worth that at the time he turned his property over to his heirs." The defendant, on his examination on his own behalf, testified that at the time of the alleged assault he had no property except his homestead, and a part maintenance amounting to about $30 per year; that the property he had before that he had divided up among his sons. "It was in land. I divided it equally among them. I don't know how many acres I gave to each. I believe Frank got about 160 acres. I don't know how much I was worth; have no idea on the subject." The above is all the evidence given on the subject on the trial.

It is not contended by the learned counsel for the appellant that it is not competent, upon a trial of this kind, for the plaintiff to give evidence of the financial condition of the defendant when the circumstances are such that the plaintiff may be entitled to recover punitory damages; but he insists that the financial condition of the defendant cannot be shown by proof of his reputed wealth, but must be confined to facts directly showing such condition. We think the objection was not well taken. Most of the cases hold that where the financial condition of the defendant may be shown in aggravation of the damages, that the evi-

dence shall be confined to the question of reputed wealth, and that evidence detailing or giving an inventory of the defendant's property is not admissible. *Stanwood v. Whitmore*, 63 Me. 209; *Kniffen v. McConnell*, 30 N. Y. 285; *White v. Murtland*, 71 Ill. 250, 261; 1 Suth. Dam. 744, 745.

In the case of *White v. Murtland, supra*, the court say: "We would here observe that the practice has grown up, though not generally customary, of raising a sort of collateral issue upon the question of pecuniary circumstances, involving a detail as to lists, kind, and value of property. This is not within the purpose or scope of its admissibility. The inquiry in the first instance should be general, whether the party be in poor, moderate, or good circumstances; if good, how good, leaving special inquiries to be made on cross-examination." This is the rule recognized in all the courts which hold that the pecuniary circumstances of the parties may be given in evidence upon the general question of damages, both compensatory and punitory. And it would seem that where the pecuniary circumstances of a defendant are held to be admissible upon the question of compensatory damages, evidence of the actual wealth of the defendant should not be admitted; but where evidence of the wealth of the defendant is admitted for the purpose of enhancing the exemplary or punitive damages, the actual wealth of the defendant may be shown. This was so decided, and we think properly, in the case of *Johnson v. Smith*, 64 Me. 553. The point of that case is that where the plaintiff had made out a case which would entitle him to demand exemplary damages, and had given no evidence as to the financial circumstances of the defendant, the defendant might introduce evidence of his real financial condition as bearing upon the question as to the amount of the exemplary damages which the jury ought to assess against him; and that in such case the rule that the reputed wealth of the defendant could only be shown, did not apply. But

the case does not decide that the plaintiff may not in such case show the reputed wealth of the defendant to enhance the exemplary damages; but it does hold that when no evidence is given on the subject, and, impliedly, that when such evidence is given, the defendant may answer it by showing his real financial condition.

We think the rule stated by the Illinois court is the true rule to be adopted. It is the only practical rule. In most cases evidence of reputed wealth would be the only evidence the plaintiff could make upon the point, and in cases where such reputed wealth is not to conclude the defendant he always has it in his power to present the real facts to the jury in answer to the general proofs of the plaintiff. In this case the evidence offered by the plaintiff upon the point could not have prejudiced the defendant. The fact appeared, even on the evidence of the plaintiff's witness, that when the cause of action arose in this case the defendant had very little property except his homestead, and the value of that was not shown by either party. The reputation of the defendant for wealth, as stated by plaintiff's witness, was a reputation he had before he had distributed his property amongst his heirs.

The second error assigned for the reversal of the judgment is that the circuit court permitted one of the witnesses who saw the transaction to answer the following question: "Did you see her make any motion as if spittle had struck her on the face?" The witness had testified that he saw the defendant spit towards the plaintiff, and, as he thought, towards her face. We think the question was competent. It was a part of the *res gestæ*. The answer of the witness was, "She raised her hand to the side of her face and passed on." There was no error in admitting this evidence.

The learned circuit judge instructed the jury as follows: "Positive testimony of a small number of witnesses that they saw or heard a given thing occur, will outweigh the

negative testimony of a greater. number of witnesses that they did not see or hear it, provided the witnesses are equally credible; but in connection with this instruction should be considered the relative means or opportunity of the several witnesses to see or hear the occurrence, and it should be carefully kept in mind that it only applies when the witnesses are equally credible." To this instruction exception was taken. We think the instruction correct in itself and as applicable to the testimony given in the case. There was the testimony of several witnesses on the part of the plaintiff that they saw the defendant spit upon the plaintiff, and the opportunity which these witnesses had to know the fact was shown to the jury. On the other hand there were several witnesses who testified on the part of the defendant, who either said that they did not see the defendant spit upon the plaintiff or that he did not spit upon her, and the opportunity these witnesses had to know the fact was also shown to the jury.

The evidence of the defendant's witnesses was essentially negative in its character, and the rule laid down by this court in the case of *Ralph v. C. & N. W. R'y Co.* 32 Wis. 177, 181, is clearly applicable. Justice Lyon in that case says: "The testimony of Todd is affirmative. He swears positively to the fact that he delivered the rope in the freight room of the depot by direction of Miss Brown. There is but little room in this testimony for failure of memory. He either did so, or he has probably committed perjury. The testimony of Miss Brown, although somewhat positive in form, is negative in fact. It means but little more than that she has no recollection of the transaction to which Todd testified." So, in the case at bar, the witnesses of the defendant who state that the defendant did not spit upon the plaintiff mean very little more than those who testified they did not see him spit upon her.

This case does not come within the rule of *Bierbach v.*

*Goodyear Rubber Co.* 54 Wis. 208, 213. In that case the instruction which was held erroneous was this: "Of course, if the witnesses are equally credible, and they so present themselves to the mind of the jury, then the greater number of witnesses on one side or the other would be entitled to the greater weight." In that case there was no question of positive and negative testimony, as in the present case. In that case Justice LYON says of the instruction: "It makes no distinction between the relative weight of positive and negative testimony,— a distinction well established in the law (3 Greenl. on Ev. § 375; *Ralph v. C. & N. W. R'y Co.* 32 Wis. 177), and it takes no account of the possible fact that some of the witnesses may have had better facilities for knowing the facts than others, or remembered them more distinctly." In the instruction excepted to in this case, both these considerations are presented to the jury. We do not consider the instruction in conflict with the rule stated in the cases of *Urbanek v. C., M. & St. P. R'y Co.* 47 Wis. 59; *Eilert v. G. B. & M. R. R. Co.* 48 Wis. 606.

The defendant requested the court to instruct the jury as follows: "If the jury find that the plaintiff was cognizant of and approving the act of Francis Draper in his approach, action, and address to the defendant, then his action in regard to the defendant became her act; and if you find that that action was intended as an insult and provocation to the defendant, then she is equally responsible and chargeable with that action and its results." This request has relation to the acts of Draper immediately before the alleged assault by the defendant upon the plaintiff, which acts it is alleged were insulting to the defendant, and excited him to do the acts complained of. After a careful reading of all the evidence in the case, we agree with the learned circuit judge that there is no evidence upon which the instruction can be fairly based, and it was therefore properly refused.

It is urged that a new trial should have been granted

Bower vs. The Chicago, Milwaukee & St. Paul R'y Co.

because the damages are excessive. The jury assessed the damages at $1,200. If the defendant committed the assault as it is alleged he did, and under the circumstances which attended and surrounded the parties at the time,— and, so far as this court is concerned, we are bound to presume that it was so committed,— we cannot say that the damages assessed are excessive. The provocation, if any, which was offered to the defendant, his age, and all the other circumstances attending the transaction, were all undoubtedly fully presented to the jury and considered by them, and their verdict is not so large as to induce this court to believe that they were actuated by passion, prejudice, or other improper motives in fixing the amount of the plaintiff's damages.

*By the Court.*— The judgment of the circuit court is affirmed.